# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEANNE SIREY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-00197** |
| **METROPOLITAN LIFE INSURANCE COMPANY** | **SECTION: "E" (4)** |

## ORDER

Before the Court is a **Motion to Strike Discovery (R. Doc. 12)** filed by the Defendant. The motion is opposed. R. Doc. 15. Oral argument was heard on June 20, 2018.

### I. Background

The instant action is a claim for ERISA long-term disability benefits. Petitioner states that she was employed by Shell Oil Company at the Motiva Refinery in Norco, Louisiana and was insured under a long-term disability policy issued in the state. Petitioner states that she initiated a claim for long-term disability benefits on January 14, 2016. She states on May 26, 2016 Metropolitan Life Insurance Company ("MetLife") denied her claim because she did not meet the definition of disability under the employer's plan. She alleges that Met Life utilized arbitrary terminology and standards for impairment and disability. Petitioner states she was awarded Social Security disability benefits for permanent disability, yet Met Life persists in its own denial.

Petitioner was employed at the Motiva Refinery beginning April 16, 2001. She states that she became mentally, emotionally, and/or physically disabled on April 24, 2015. She argues that her treating physician declared her totally disabled as a result of her anxiety and depression from April 24, 2015 until the present and was prescribed medication including Xanax. She further states that the employer prohibits its employees from working while taking Xanax, Prozac, and other medications that were prescribed to control her stress, anxiety, and depression.

1

During the time she was already out of work due to mental disability, she suffered a severe right foot injury from a fall and underwent surgery. Her treating physicians have declared her unable to return to her former occupation and MetLife's own consultant has agreed she does have permanent restrictions and limitations beginning on October 2, 2015, when she injured her foot.

Petitioner contends that that MetLife arbitrarily and capriciously ignored the opinions, diagnoses, and documented reports of multiple treating physicians and in lieu of an "independent" consultant's arbitrary and inaccurate opinions and the denial of benefits is wholly unjustified. She argues that the denial was done in bad faith, was arbitrary and capricious, fraudulent, and was legally and factually unjustifiable. As a result, she seeks her long-term disability benefits retroactive from the date the disability began, the right to future benefits, costs, and attorney's fees.

MetLife filed the instant motion seeking to strike discovery propounded by the Petitioner because it is outside the scope of the ERISA Case Management Order and seeks information outside the Administrative Record and the scope of discovery allowed in ERISA actions. R. Doc. 12. Further, MetLife contends the discovery is unduly burdensome and not proportional to the needs of the case.

Petitioner opposes the motion arguing that the discovery focuses on identifying whether documents appear in the Administrative Record or with MetLife's interpretation and application of the terms of the Employee Benefit Plan. R. Doc. 15. She argues that this discovery is an attempt to identify very specific things related to determinations made in the case and understanding the interpretations of the Plan it administered, the medical terminology used by MetLife in the denial of benefits, and conflict of interest issues.

## II.     Standard of Review

Fed. R. Civ. P. 26(b)(1) states in pertinent part that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.... Information within this scope of discovery need not be admissible in evidence to be discoverable." Limitations on discovery include those set out in Fed. R. Civ. P. 26(b)(2)(C), including that the court must limit the frequency or extent of discovery otherwise allowed by the Rules if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i) and (ii).

With respect to ERISA actions brought under 29 U.S.C. § 1132(a), courts are charged with monitoring discovery "closely" because review "is essentially analogous to a review of an administrative agency decision." *Crosby v. Louisiana Health Service and Indemnity Co.,* 647 F.3d 258, 264 (5th Cir.2011). As such, discovery is disallowed where it would constitute reconsideration of the administrative record and whether coverage should have ultimately been afforded. *Vega v. National Life Insurance Services, Inc.,* 188 F.3d 287, 299–300 (5th Cir.1999), *abrogated on other grounds by Metropolitan Life Insurance Co. v. Glenn,* 554 U.S. 105 (2008). However, this prohibition does not extend to other questions which may arise in an ERISA action, such as: (1) the completeness of the administrative record; (2) the plan administrator's compliance with ERISA's procedural regulations; and (3) the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan. *Crosby,* 647 F.3d at 263. In addition, evidence is irrelevant to the validity of the decision regarding coverage under the plan unless it "is in the administrative record, relates to how the administrator

has interpreted the plan in the past, or would assist the court in understanding medical terms and procedures." *Id.*

## III. <u>Analysis</u>

The discovery dispute before the Court encompasses both Interrogatories and Requests for Production ("RFP"). The Court will first address the Interrogatories and then will examine the Requests for Production. In her opposition, the Petitioner argues that there are two major components to the ERISA claim here. First, that Petitioner last worked her job at the Shell-Motiva Plant on April 24, 2015 and from that point on she was deemed as being mentally disabled from returning to her prior employment by her treating physicians and counselors. Second, on October 2, 2015, she suffered a severe right foot injury such that MetLife's own independent reviewers have now determined her as permanently disabled from that foot injury. She argues the discovery is meant to address certain aspects of MetLife's determination that she is not entitled to benefits from either claim.

Second, Petitioner argues that her regular use of Xanax, Lexapro, and Prozac is part of the mental disability claim and the use is well-documented in the administrative file and that during her claims process and appeal she repeatedly informed MetLife it was her understanding she was not allowed to work in her job at the Plant with these medications in her system. Petitioner states that MetLife's claims activity notes indicate the question of whether she could return to work while on Xanax was an issue to be determined, but there is not a single document indicating that she would be allowed to return to work while taking these drugs in the Administrative Record even though it was a significant factor in the determination. She argues that activity logs show that the use of Xanax was not automatically prohibited, but is decided on a case-by-case basis, but there is nothing from the employer to MetLife done to confirm that in this case.

A. **Interrogatories**

**INTERROGATORY NO. 1**:

What did you do to determine whether the employer, Shell Oil Company and/or Motiva Enterprise, prohibited or allowed the use of psychiatric medications, including Xanax, Prozac, Lexapro, and/or any and all other medications utilized by Jeanne Sirey, while employed by employer and/or while at actually work [sic] at the employer's facility?

**INTERROGATORY NO. 2:**

Please identify any and all documents which you obtained from the employer regarding your Answer to Interrogatory No.1, as well as the names of any and all witnesses, claims representatives, medical review personnel, and/or any and all other persons known by you to be involved in locating this information and/or making a determination concerning Sirey's ability to work while being treated with Xanax, Prozac, Lexapro, and/or any and all other medications known to have been used by Ms. Sirey during the relevant time period.

**INTERROGATORY NO. 3:**

Please identify any and all documents and/or references in the MetLife administrative file that document or declare your determination that Xanax, Prozac, Lexapro, and/or any and all other such medications were specifically allowed to be used by Jeanne Sirey should she return to work at the Shell Oil Company and/or Motiva facility.

MetLife argues these Interrogatories seek information outside the Administrative Record and are not within one of the exceptions identified by the Fifth Circuit. Petitioner argues that Interrogatories are directed to finding whether MetLife actually did confirm Sirey's ability to return to work while taking these medications and to identify the supporting documents in the Administrative Record that the Court and Petitioner can review. Petitioner argues that this discovery goes directly to MetLife's reasonableness of the determination and argues that Petitioner and Court would need to know whether there was a decision she was capable of returning to work because the determination could be unreasonable based on the lack of documentation on this issue alone. Further, she argues that MetLife's assessment of this medication issue and the discovery

here is necessary to determine whether MetLife's assessment was consistent with the plan or an unreasonable and arbitrary determination.

As the Fifth Circuit noted, one exception to the limitations of discovery in ERISA actions is when the completeness of the administrative record is challenged. A review of Exhibit 5 seems to indicate that that the determination of an employee's ability to return to work while on Xanax is determined on an individual basis and that "PCS" updated "NC" that this new information did not support psych limitations preventing "EE" from working. R. Doc. 15-5. The Court finds Interrogatory Nos. 1 and 2 seemingly challenge the completeness of the Administrative Record as it related to MetLife's determination. As such, the motion is denied with respect to Interrogatory Nos. 1 and 2. However, Interrogatory No. 3 asks MetLife to identify the documents or references already in the Administrative Record. Petitioner has an obligation to review the record and the duty to determine what is in the record with respect to this Interrogatory. That duty is not delegated to the opposing party. As such, with respect to Interrogatory No. 3 the motion is granted.

**INTERROGATORY NO. 4:**

> Please state the number of psychiatric independent physician consultant reviews performed by Dr. Marcus Goldman for MetLife and/or any and all of its subsidiary and/or affiliated companies during the claim and/or appeal process of any ERISA long term disability benefit claims for the past ten years.

MetLife contends that it has no obligation to provide the number of reviews performed by an Independent Physician Consultant retained to review medical records. A review of the opposition in this matter reveals no argument with respect to Interrogatory No. 4. The argument by the Petitioner skips from Interrogatories Nos. 1-3 to Nos. 5 and 6. In reviewing the request, however, courts have found that the number of times a third-party medical professional has been retained is discoverable. *See Burgio v. Prudential Life Ins. Co. of Am.,* 253 F.R.D. 219, 233 (E.D. N.Y.2008) (holding that insurance company's financial arrangements with medical professionals

as well as the number of times they had been retained by insurance company to provide similar services was discoverable); *see also Crider v. Life Ins. Co. of N. Am.,* Civ. A. No. 3:07–CV–331, 2008 WL 239659, *6 (W.D. Ky. Jan. 29, 2008). The Court does find that the Interrogatory's temporal scope is too broad. As such, the Court orders that MetLife shall respond to this Interrogatory with the temporal scope limited to three years.

### INTERROGATORY NO. 5:

> Please identify the portion of the MetLife Long Term Disability Plan ("the Plan") which requires a "globally impairing mental disorder" as that term is used by Dr. Goldman and in MetLife's denial letter to Jeanne Sirey.

MetLife argues that it has no duty to interpret the plan and/or terminology used in correspondence to Petitioner as requested in this Interrogatory. In opposition, Petitioner argues that *Crosby* and *Vega* allowing the interpretation of an ERISA plan, which is what this Interrogatory seeks. Petitioner argues that Dr. Goldman used the term in his report to MetLife which was then adopted and therefore it is appropriate to seek identification of where in the Administrative Record or Plan the language exists.

While Petitioner argues that this Interrogatory is permissible because it involves the interpretation of the ERISA plan, the plain language merely asks where in the Plan the language exists. To the extent the language exists the Petitioner should be able to find it and point to the Court to it, to the extent that language and requirement is not present then Petitioner can direct the Court to its absence. As such, MetLife's motion is granted with respect to this Interrogatory No. 5.

### INTERROGATORY NO. 6:

> Please identify any diagnostic criteria or other guidelines utilized by MetLife and/or by Dr. Marcus Goldman that requires Jeanne Sirey to have a "globally impairing mental disorder" to meet the definition of a "disability" from a "Mental illness" as defined by the Plan.

7

MetLife argues that it is not required to identify the guidelines or criteria used by itself or the medical consultant as requested in this Interrogatory. Petitioner argues that this Interrogatory seeks the explanation or identification of the medical criteria or guidelines that equates disability and mental illness to a globally impairing mental disorder. It argues that if MetLife uses a guideline or criteria differing than the definitions in its own Plan it should be "fair game" to explore the differences in terminology.

Once again, the Court finds that this request is not seeking interpretation, but rather asking MetLife to point out where specific terms exist. Once again, the Court finds that to the extent that these definitions are present in the Plan or Administrative Record the Petitioner that is information easily accessible to the Petitioner. As such, the motion is granted with respect to Interrogatory No. 6.

**INTERROGATORY NO. 7:**

> Please identify any and all "comparable occupations" or alternative jobs that were ever offered to Jeanne Sirey by Shell Oil Company and/or Motiva Enterprise after April 24, 2015, and, if any, identify where that comparable occupation or alternative job offer was documented in the administrative file.

MetLife argues that Shell is not a party and therefore this discovery is impermissible as it is a question that only Shell could answer. Petitioner argues that the Plan defines disability to include whether the Petitioner could perform each of the material duties of her job or a comparable occupation offered to her during the elimination period. Petitioner argues she seeks to determine whether such a comparable occupation was offered, and if so, whether there is something about it documented in the Administrative Record. Petitioner argues that this question goes to MetLife's interpretation of its policy and application of the terms of the policy to its decisions, and whether such documentation exists in the Record.

First, to the extent Petitioner was offered a job during the elimination period, the Petitioner would know if that occurred. Second, to the extent that information exists or does not exist in the Administrative Record, Petitioner's counsel should review the record to determine what is there. As such, the Court grants the motion with respect to Interrogatory No. 7.

**INTERROGATORY NO. 8:**

Please identify Dr. Puja Korabathina (medical director), including his position and/or title with MetLife, length of employment, or any other description of his relationship with MetLife and his involvement in the past five (5) years with making medical review opinions for MetLife.

MetLife objects to this Interrogatory as this physician has no relevance to the Petitioner's claims and is not in the administrative record, further the five years of information is burdensome and not proportional to the needs of the case. Petitioner argues that this individual is a "medical director" involved in the decision to deny benefits, but Petitioner is unsure who this person is, what position they hold, whether they were employed directly by MetLife, whether they made the ultimate decision, or whether they had made similar decisions in similar cases before.

The Court finds, as noted above, this information is discoverable and would not necessarily be contained within the Administrative Record. Therefore, the Court denies the motion with respect to this interrogatory and limits the temporal scope to three (3) years.

**INTERROGATORY NO. 9:**

Please state the number of psychiatric independent physician consultant reviews performed by Dr. Mark Schroeder for MetLife and/or any and all of its subsidiary and/or affiliated companies during the claim and/or appeal process of any ERISA long term disability benefit claims for the past ten (10) years.

MetLife to objects to this request as unduly broad and unduly burdensome. Once again, as with Interrogatory No. 4, this information is discoverable, however, the Court limit the scope to

9

three (3) years. As a result, the motion is denied with respect to Interrogatory No. 9.

**INTERROGATORY NO. 10:**

Please identify by page number in the administrative file any conclusion by either Dr. Markus Goldman or Dr. Mark Schroeder that Jeanne Sirey was capable of performing "each of the material duties" of her regular job or a comparable occupation with her employer at these.

MetLife objects to this Interrogatory because the administrative record speaks for itself and do not need interpretation by MetLife. In opposition, Petitioner argues that the Interrogatory only asks MetLife to identify the documents and therefore it is a simple answer. Once again, Petitioner seems to believe that it is the Defendant's obligation to sift through the Administrative Record to cite to specific documents and evidence for the Petitioner, however, the Court finds that the Defendant is not required to marshal Petitioner's evidence for her. As such, the Court grants the motion with respect to Interrogatory No. 10.

**INTERROGATORY NO. 11:**

Why does Jeanne Sirey not qualify for long term disability benefits under the plan after October 2, 2015 (the date of her ankle injury) even if she was not mentally disabled before that date? In your answer, please identify and explain where in the Plan it states that the elimination period could or would not start again on October 2, 2015, and, therefore, entitle Jeanne Sirey to benefits after a new elimination period beginning October 2, 2015.

**INTERROGATORY NO. 12:**

Please explain how the medical documentation failed to support that Jeanne Sirey was unable to perform each of the material duties of her regular job after April 24, 2015 as stated on page M009790 in the administrative file.

**INTERROGATORY NO. 13:**

Please explain how the medical determination failed to support that Jeanne Sirey was unable to perform each of the material duties of her regular job after October 2, 2015.

MetLife contends that to the extent that Interrogatories Nos. 11, 12, and 13 seek explanations from MetLife concerning the failure of medical documentation to support that she was unable to perform the material duties of her regular job and why her dates of disability cannot be calculated differently, Petitioner seeks information outside the Administrative Record and outside the parameters of discovery allowed by the Fifth Circuit.

In opposition, Petitioner states that these Interrogatories are all concerned with and directed toward the interpretation of the Plan by MetLife and whether it is consistent with the facts and Plan definitions. She argues that MetLife's own reviewers have concluded Petitioner has a permanent physical impairment stating October 2, 2015 and continuing into the indefinite future, but MetLife still denied benefits. Therefore, she argues that the questions are not to determine the merits of the conclusions, but rather to determine whether there is any interpretation of the Plan that prohibits the elimination period from starting over again after October 2, 2015. Petitioner contends this information is not answered in the Administrative Record or Plan. Further, Petitioner states with respect to Interrogatories Nos. 12 and 13 asks for information that MetLife will have to provide to the Court in briefing.

The Court finds that Interrogatories Nos. 11, 12, and 13 do not fall within the bounds of ERISA discovery as established by the Fifth Circuit. They do not seem applicable to the completeness of the Administrative Record, conflicts of interest, or compliance with ERISA regulations. Further, they do not seem to be the sort of discovery request that encompasses assisting the Court in understanding medical terms or procedures or the interpretation of plans in the past. As such, the motion is granted with respect to Interrogatories Nos. 11, 12 and 13.

## B. Requests for Production

While MetLife's motion seeks to strike all discovery propounded in this matter, a review of the motion does not provide any specific objections to RFP Nos. 1-3 that were propounded on it. Rather, the motion seeks to strike RFP Nos. 1-3 without any reasoning as to each request.

**REQUEST NO. 1:**
Please produce a copy of any and all letters wherein you approved long term disability benefits under an ERISA Plan for any mental illness, alcohol or substance abuse related claims, whether before appeal or after appeal, within the last five (5) years (Appropriate and reasonable redactions of private information are acceptable.)

**REQUEST NO. 2:**

Please produce any and all opinions and/or reports received by MetLife from Dr. Markus Goldman for any psychiatric reviews for long term disabilities benefits in the last ten (10) years (appropriate and reasonable redactions are acceptable.)

**REQUEST NO. 3:**

Please produce any and all opinions and/or reports received by MetLife from Dr. Mark Schroeder for any psychiatric reviews for long term disabilities benefits in the last ten (10) years (appropriate and reasonable redactions are acceptable.)

Nowhere in MetLife's motion to strike discovery or in its reply to the opposition filed does it specifically address RFP Nos. 1-3. However, the motion does state that Petitioner is not entitled to any discovery. As a result, the Court will analyze these request under the *Crosby* and *Vega* standards.

Petitioner argues that RFP No. 1 is reasonable in scope and is directed towards similar decisions made by MetLife regarding similar, mental, alcohol, and substance abuse disabilities and is limited to a timeframe of five (5) years. She further argues that this discovery request is almost identical to what the Court allowed in *Crosby* and therefore should be permitted here.

Petitioner argues that RFP Nos. 2 and 3 seek information towards demonstrating the potential conflict of interest that exists for these same independent reviewers, whether they have

concluded similarly in the past for MetLife, and whether Dr. Goldman had used the same language of "globally impairing" to define mental disability.

With respect to RFP No. 1, the Court finds that the Fifth Circuit in *Crosby* found that the Petitioner in that case was prejudiced when it was not allowed discovery as to whether coverage was afforded in similar situations. *Crosby*, 647 F.3d 258 at 264. However, RFP No. 1 seeks all letters where long term disability benefits were approved under an ERISA Plan for mental illness, alcohol or substance abuse related claims for five years. The Court notes that a review of the complaint in this matter does not indicate that Petitioner had any alcohol or substance abuse issues, but rather suffered from anxiety and depression. As such, the request seems to seek determinations about conditions that are not similar. Further, the temporal scope of this matter seeks five years of information, because the Court has previously limited the temporal scope to three (3) years in other discovery requests the Court finds that appropriate here as well. Therefore, the motion is denied, however the temporal scope shall be limited to three years and the request shall be limited to mental illness approvals.

With respect to RFP Nos. 2 and 3, the Court once again finds that the temporal scope is too broad and limits the request for a period of three years. As such, the motion is denied, however, the Court limits the discovery as stated.

## IV.  Conclusion

Accordingly,

**IT IS ORDERED** that the Defendant's **Motion to Strike Discovery (R. Doc. 12)** is **GRANTED IN PART** and **DENIED IN PART**.

The motion is **GRANTED** with respect to Interrogatories Nos. 3, 5, 6, 7, 10, 11, 12, and 13. The motion is **DENIED** with respect to Interrogatories Nos. 1, 2, 4, 8, and 9 as well as Request

for Production Nos. 1-3 and responses shall be produced **no later than twenty-one (21) days** from the signing of this order subject to the limitations set forth by the Court.

New Orleans, Louisiana, this 16<u>th</u> day of August 2018.

**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**